## Count 39

<u>The prosecutor highlighted on at least 7 different occasions within his initial</u>
<u>closing argument that the petitioner did not testify.</u>

The petitioner in the subject case did not testify in either trial of *State v.*
*Saunders.*

An exemplary list of statements in initial closing arguments highlighting the fact
the petitioner did not testify:

I think even the defendant knows in order for his self-defense claim to be
successful he has to have everybody believing that Dominic was reaching for
a gun.

The defendant knows he must sell his self-defense claim.

He must establish Dominic was reaching for a gun.

So in a way he is giving you 2 self-defense claims.

You know the defendant doesn't write it in his statement—he doesn't write in his
statement that Sue was hit or it's not included in this statement that Sue was hit.

What the defendant is doing here is he's trying to bolster his claim of self-defense
and he's using deception to do it.

He's trying to make his case look good.

He's trying to sell his case of self-defense.

He didn't honestly believe that Dominic was going to shoot him, otherwise he
wouldn't have been dishonest about 4 guys beating him up in the bar.

The defendant is using deception once again to bolster his claim of self-defense.

The defendant never once inquired about a gun the police found---finding a gun.

His belief that Dominic was armed is just conjecture.  It's a guess.

The defendant surmised that Dominic had a gun without any direct proof that



Dominic actually had a gun.

But on the issue of whether Dominic had a gun, here's some thoughts. If you want to ask whether the defendant would ask, did Dominic have a gun. He doesn't ask that question.

The defendant never said he saw anyone taking a gun.

He's not saying this was an accidental discharge or anything like that.

The prosecutor's initial closing remarks highlighting the petitioner's not testifying was improper. The petitioner has to prove nothing.

Absent the misconduct of the prosecutor repeatedly referencing the fact that the petitioner did not testify the outcome of the trial, sentencing and appeal could have been different.

### Count 40

The prosecutor repeatedly vouched for the credibility of witnesses within his initial closing arguments.

Listed below are exemplary statements:

You know the only way the defense could establish that Sue might have been pushed was to bring in these 2 people who were never in the bar, who don't like Sue and they got on the stand and they said Sue said this in our presence. It's hard to combat that type of information. We could bring in a 3rd person to say another person said something to you; it's tough, it really is that's why I object to it. I don't think its good and I don't think its reliable evidence.

Let's forget about Sue. Pull her out of the equation. Pull Sue Bruemmer out of the equation, Patty Joy out of the equation and Stephanie Jacobson. Just forget about Sue for a second, just go by what the other witnesses said.

I don't think he hit her and I think the defense is being deceptive about that.



You know, Dominic's friends were drawn to his side by a sense of compassion. I think it's scurrilous to suggest that they went to him to take something.

I don't want to get myself in trouble here but sometimes men have a better understanding about that one on one type of fighting issue between men because men, it seems, engage in that behavior and I would ask for the other juror (the only woman juror on the panel) to listen to what they have to say on that.

"Any man would say that."

Now Sue at the time was providing him with financial support, you would think Sue is the closest person in his life. If he was going to level with anybody you would think he would level with her.

I think there's a big credibility problem here. He didn't honestly believe that Dominic was going to shoot him.

Absent the prosecutor's vouching for credibility of witnesses including general statements regarding his thoughts on credibility issues the outcome of the trial, sentencing and appeal could have been different.

### Count 41

Within the prosecutor's initial closing arguments he shifts the burden of proof to the defendant to prove he acted in self-defense.

Below are exemplary statements.

I think even the defendant himself knows in order for his self-defense claim to be successful he has to have everybody here believing Dominic was reaching for a gun.

Even the defendant must sell the self-defense claim in order to be successful. He must establish Dominic was reaching for a gun.



He didn't honestly believe that Dominic was going to shoot him because the defendant never once inquired about a gun the police found—finding a gun, a powerful piece of evidence. If you shot someone because you thought they were going to kill you wouldn't you want to know if you made a mistake or not? The absence of this question speaks volumes.

Let's say for a second he really believed Dominic had a gun, well, he never saw Dominic with a gun, so he must be making some kind of deduction here and he's got no evidence to back it up.

The defendant never saw a gun, he never heard a gun, he had no evidence whatsoever that Dominic was armed.

Let me say this about the presence of another gun, if I can because a lot was made of it and a lot was made of it by innuendo. I mean the defense kept asking these questions about searching and you find a – you know searching. Could somebody have taken something from Dominic? It was all done by innuendo. No direct evidence of it. It's that weak. There is no evidence of it. It has to be done by innuendo.

The prosecutor within his initial closing arguments shifted the burden of proof to the petitioner to prove he acted in self-defense on 10 pages of his 34 page initial close.

The repeated suggestion to the jury that it was defendant who had to have evidence regarding the decedent's firearm or the defense had the burden to prove anything is not within the standards of Connecticut juris prudence and has seriously prejudiced the claims of the petitioner.

Absent the prosecutorial misconduct the outcome of the trial, sentencing and appeal could have been different.



**Count 42**

**The prosecutor repeatedly misstates the law regarding this prevaricated warning requirement he's presented to the jury.**

The majority of his presentation regarding this fabricated violation of a verbal warning is within his personal opinion regarding this requirement.

Murray states in his initial closing arguments on 25 separate occasions that the defendant didn't <u>warn</u> the decedent prior to using a gun both offensively or defensively.

Murray questions on 16 separate occasions during trial state witnesses regarding if they heard any verbal warning prior to using a firearm either offensively or defensively.

This line of questioning seriously prejudiced the petitioner. The jury was never instructed by the court that in Connecticut there is not now nor has there ever been a verbal warning requirement prior to using a firearm.

The frequency of the questions during trial and comments in initial closing arguments could only appear that the petitioner was in violation of this prevaricated warning requirement fabricated by prosecutor Murray.

The Connecticut Supreme Court opined at [25]:

> Several witnesses testified that they heard the victim make a statement as he entered the kitchen and approached the defendant, but there is no evidence to corroborate the defendant's assertion that he had warned the victim that he would shoot him if the victim continued to move toward him.

It is apparent that this fabricated warning requirement has had a bearing on the self-defense standards within the State of Connecticut pursuant to the state Supreme Court's decision, supra.

*83*

A point of interest in this claim is the unsworn testimony of prosecutor Murray. Absent the misconduct of the prosecutor the outcome of the trial, sentencing and appeal could have been different.

**Count 43**

The prosecutor frequently expressed his opinion within his closing arguments regarding the guilt of the petitioner.

Below are exemplary remarks regarding this opinion evidence:

And you have to admit that Mr. Saunders had the intent to cause serious physical injury. I'm not even saying that Mr. Saunders intended to kill Mr. Badaracco, all I'm saying is he intended to hurt him. I think that charge is proven beyond a reasonable doubt that particular charge. I'll say more about the reckless charge later. I think that's proven beyond a reasonable doubt.

So in a way, the defendant, I would argue to you, is not disputing the fact he didn't commit a manslaughter in the 1st degree. He's just saying he was justified, so I'm trying to tell you that I think that the manslaughter charge has been proven.

The defendant did not in fact believe that he was in imminent danger of death or great bodily harm.

He didn't believe that in the kitchen. The defendant did not have a reasonable basis to believe that he was in imminent danger of death or great bodily harm. Mr. Saunders did not, in fact, believe that he needed to use deadly physical force to repel Mr. Badaracco.

This defendant did not honestly believe that Dominic was going to shoot him because the statement about reaching for a gun is untruthful.

So I don't believe he's being truthful about his claim that Dominic reached for a



gun. The warning is critical I think. It's an important piece of information. He didn't honestly believe he needed to shoot.

Well, let's look at his first self-defense claim in the bar area. Is he truthful about that one? And if he's not being truthful about that one, is it such a stretch of the imagination to believe that he might be untruthful about the self-defense situation in the kitchen. I don't think so.

He had alternatives available. He could have shot a non-vital area. He could have fired a warning shot. He could have fought with Dominic. He could have run. He could have discharged the bullets so the gun wouldn't operate. Within the exemplary opinions that went towards the petitioner's guilt by repeatedly offering his unsworn testimony of "I think", "he didn't believe" and the like, prosecutor Murray has prejudiced this petitioner by implying to jurors he must know something about the case that wasn't presented.

The opinion evidence offered above are not legal alternative and could only further confuse the jury as to the legality of lethal force.

Absent the misconduct of the prosecutor the outcome of the trial, sentencing and appeal could have been different.

### Count 44

The prosecutor made extraneous statements known to be false to the newspaper (The Danbury News-Times) to taint or influence the potential jury pool.

State's Attorney Warren Murray made a derogatory statement on December 10, 1997; 12 months after the subject arrest. The News-Times quoted Mr. Murray: "States Attorney Warren Murray said Badaracco was defenseless, this was a shooting of an unarmed man in the back."

The jury pool had to be repeatedly admonished because prior comments linked



to the prosecutor's office in Danbury stated, "Saunders left the area of the fight and returned with a gun."

These known false comments prejudiced the petitioner.

Rules of Professional Conduct at 3.6: A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have substantial likelihood of materially prejudicing an adjudication proceeding in this matter.

Absent the misconduct by the prosecutor the outcome of the trial, sentencing and appeal could have been different.

### Count 45

The prosecutor obtained highly prejudicial statements from named witnesses and presented this statement on the day of sentencing.

Prosecutor Murray identified 2 witnesses, Brad Bauer and his wife, Karen Bauer, in March of 1998.

Murray claimed in writing he may present evidence that this petitioner brandished a firearm. This allegation was investigated, parties interviewed and defense was ready to counter any claim to that event.

Brad Bauer was never called as a witness in trial 1.

On December 9, 1999 Murray again communicated in writing that the state doesn't intend on using any prior misconduct during its case in chief but again references this fabricated brandishing incident.

Investigators for the defense again questioned named parties in alleged incident and again incident was denied; it never happened.

None of these allegations were brought up in trials 1 and 2; Bauer was not called



as a witness.

After the conviction and on the day of sentencing, May 30, 2001, four years after

the identification of this witness, prosecutor Murray at 9am on sentencing

morning hands into the judge a statement from Brad Bauer and his wife

claiming once again this petitioner brandished a firearm.

Murray knew these statements were false.

Murray intentionally took these statements the night before

sentencing so this petitioner could <u>not</u> confront these witnesses regarding these

allegations.

By circumventing the confrontation clause within the State of Connecticut

constitution and the U.S. constitution this petitioner was prejudiced as the judge

accepted these statements and stated:

> The court in sentencing will apply whatever weight it intends to apply to all
>
> the materials submitted by counsel on behalf of their respective positions
>
> and consider and sentence what the court finds appropriate.

Absent the misconduct by the prosecutor the outcome of the trial, sentencing,

and appeal could have been different.

### **Count 46**

<u>The prosecutor served on this petitioner's power of attorney a subpoena duces</u>

<u>tecum ordering the entire case files containing state and federal work product be</u>

<u>surrendered to him.</u>

Murray had his investigator serve a subpoena duces tecum to Patricia Joy on

February 2, 2000 while she attended pre-trial hearings for the petitioner.

This subpoenas commanded her to produce what was tantamount to entire case

files of all pending actions in the matter of *State v. Saunders* within 16 hours.



A subpoena duces tecum in this state allows 15 days to respond.

Murray knew or should have known according to Connecticut Rules of Court the items that are specifically requested are not subject to disclosure by the defendant or any person in connection with the investigation or defense of the case.

Murray knowingly and intentionally circumvented Connecticut Rules of Court by not complying with:

1) § 40-2 obtaining discovery by subpoena and § 40-8 of discovery procedures.

2) He failed to adhere to the time frame for response to his request for disclosure.

Murray's inspector failed to make an inventory of the items seized as directed by the court.

Murray knowingly destroyed original documents within those boxes during the time his office was in possession of the 3 boxes seized from petitioner's power of attorney.

The acts and omissions concerning the documents seized by prosecutor Murray has severely prejudiced this petitioner.

Murray was able to adjust his trial strategy according to the findings of this petitioner's entire case file.

Murray knew after a mistrial he had to obtain a conviction because he read and copied the petitioner's evidence that Mr. Murray fabricated, destroyed and altered evidence he presented at state trial.

Murray was a defendant within a federal complaint that was dismissed with these specific allegations.



Absent the misconduct of the prosecutor the outcome of the trial, sentencing and appeal could have been different.

**Count 47**

Prosecutor Murray displayed unsworn testimony for exclusive view of the jury.

Murray prior to and during his closing arguments to the jury displayed in writing his thoughts and propositions of law concerning this case for the exclusive view of the jury.

These thoughts and propositions of law have never been shown or displayed to anyone except the jury.

These thoughts are tantamount to unsworn testimony and could literally have said anything.

The harm is immeasurable and may have been the single reason why this petitioner was convicted of a crime, "reckless indifference manslaughter- first degree", that did not appear on any [emphasis added] documentation presented to the jury. (See verdict, **ATTACHMENT 2**)

Absent the prosecutorial misconduct the outcome of the trial, sentencing and appeal could have been different.

**Count 48**

The prosecutor repeatedly misrepresented the evidence educed at trial within his closing arguments.

Murray intentionally misrepresented the shots to the decedent to dramatically enhance his position that the petitioner did not act in self-defense.

Prosecutor Murray stated at 18-19: The defendant didn't honestly believe Dominic was going to shoot him because Dominic had to have his back to the defendant for at least 3 of the shots.



The bullets---the direction of the bullets, I don't know.  I ---If they're traveling downward perhaps that suggests that Mr. Badaracco was falling and retreating. (At pg 70 lines 24-27-Rebuttal close)

They retrieved a bullet <u>he</u> shot through the back of Dominic so he could receive a fair trial.  How much better can the police do than that? (At pg 77 lines 14-17)

Mr. Field was right in what he said about the initial aggressor rule.  If somebody breaks off a conflict then a whole new situation of self-defense starts.  I'm not necessarily willing to concede that that was communicated to Dominic Badaracco.  The initial aggressor must communicate his intention to break off the conflict in a way that Dominic would have understood that. (At pg 78)

Dominic was minding his own business. Mr. Saunders and his girlfriend walked into this place. They gave him the finger, you know, they cursed at him. They threw a drink in his face; one of them went over and jammed a gun in his face. (At pg 79)

The prosecutor's misrepresentation of facts elicited by him in his closing arguments have prejudiced the defendant.

Absent the misconduct by the prosecutor the outcome of the trial, sentencing and appeal could have been different.

### Count 49

<u>The cumulative effective misconduct on behalf of the prosecutor has deprived this petitioner of a fair trial.</u>

The cumulative effective misconduct on behalf of the prosecutor within counts 32-49 has deprived this petitioner of a fair trial.

Absent the cumulative effective misconduct on behalf of the prosecutor the outcome of the trial, sentencing and appeal could have been different.



## <u>Ineffective assistance of</u>

## <u>appellate counsel</u>

The petitioner was deprived of effective assistance of appellate counsel on his direct appeal resulting in his being burdened by an unreliable trial.

<u>Bunkley v. Warden</u>, 222 Conn. 444, 610 A. 2d 598 (1994)

<u>Smith v. Robbins</u>, 120 S.Ct. 746, 764 (2000)

**Count 50**

<u>Appellate counsel failed to challenge substitute information as fundamentally</u> <u>flawed.</u>

Appellate counsel failed to present claims of fundamentally flawed substitute information that was one of the core prejudices that resulted in this petitioner being found not guilty and guilty of the same crime.

Had appellate counsel challenged this information the outcome of the trial, sentencing and direct appeal could have been different.

**Count 51**

<u>Appellate counsel failed to raise meritorious claim of instructional errors on self-</u> <u>defense</u>.

Appellate counsel failed to object to the court's jury instructions that if the jury found not guilty of manslaughter in the 1st degree with a firearm intentional conduct, they could consider a lesser included offense thus directing them to reconsider the same elements of self-defense that resulted in prior acquittal. Had appellate counsel challenged this instruction on self-defense the outcome of the trial, sentencing and direct appeal could have been different.



**Count 52**

Appellate counsel failed to challenge the court's instruction on the *Sawyer* charge
or the acquittal first doctrine.

Appellate counsel failed to present claims of an instructional error as to the
court's jury instructions of the mandated acquittal first doctrine. The court
instructed the jury at pgs 154-155 lines 1-8:

> I've heard from counsel, counsel has the right to object and make
> comments regarding the court's instructions. I'm going to make it clear
> regarding the issue of the count. The "alternative means" the state has
> charged or alleged in committing manslaughter your verdict on either
> alternative must be unanimous. If you decide on intent it must be
> unanimous. If you decide on the reckless portion it must be unanimous.
> All your verdicts must be unanimous. You do not need to clearly decide
> both of them just decide one, either intent based on your view of the
> evidence and the law or reckless based on your view of the evidence and
> the law.

Had appellate counsel challenged this instruction as inconsistent with acquittal
first doctrine and that it is an effective directed verdict for the state, the outcome
of the trial, sentencing and direct appeal may have been different.

**Count 53**

Appellate counsel failed to challenge the jury instruction as it pertained to the
alternative means doctrine.

Appellate counsel failed to present claims that the "alternative means" as they
were charged and presented to the jury were inconsistent with the acquittal first
doctrine.



Appellate counsel failed to present facts that the record in both trials is completely devoid of any unintentional or accidental conduct that was not stipulated to within both trials by a claim of self-defense.

Appellate counsel failed to present claims that to charge 2 separate crimes, each with distinct elements and states of mind contradicts Connecticut Rules of Court. In Connecticut to charge conjunctively an element of one count cannot negate an element of another count.

The instructions at bar instruct the jury to prosecute 2 separate crimes.

Had appellate counsel presented this claim the outcome of the trial, sentencing and direct appeal could have been different.

## Count 54

<u>Appellate counsel failed to challenge the jury verdict as inconsistent from the judge's instructions.</u>

Appellate counsel failed to present on appeal that the jury instructions required the jury to consider manslaughter in the 2nd degree after a unanimous <u>not guilty</u> verdict on the 1st charge they deliberated, manslaughter in the 1st degree with a firearm.

Had appellate counsel presented this fact (assuming arguendo that this an acceptable charge) the outcome of the trial, sentencing and direct appeal could have been different.

## Count 55

<u>Appellate counsel failed to raise on direct appeal the repeated acts of prosecutorial misconduct prior to, during and within closing arguments of the petitioner's trial that resulted in conviction.</u>

Appellate counsel failed to present obvious, malicious and unlawful conduct of



the prosecutor within trials of this petitioner.

This count incorporates counts 32-49 within this complaint.

Had appellate counsel presented claims within prior counts on direct appeal the outcome of the trial, sentencing and appeal could have been different.

### Count 56

Appellate counsel failed to make obvious and meritorious claims challenging the constitutional violations involving the right to confront your accusers.

Appellate counsel failed to present claims of a violation to confront Brad and Karen Bauer whose statements were presented at sentencing.

These witnesses were identified 4 years prior to obtaining and presenting these statements.

These witnesses were not called to testify in either trial on the subject matter that was revealed to defense, investigated and proven false.

This petitioner was unable to confront the witnesses regarding these extremely prejudiced statements.

The prejudice to this petitioner is unquantifiable and indeterminate regarding this matter.

Had appellate counsel presented this claim on direct appeal the outcome of the trial, sentencing and appeal could have been different.

### Count 57

Appellate counsel failed to raise 6th amendment claim that was properly preserved by trial counsel.

Appellate counsel failed to raise a claim that the trial court erred in denying this petitioner's motion to suppress custodial statement.

Appellate counsel should have presented the different fact pattern that developed

94

within the testimony of the 1st trial.

This fact pattern was substantially different from evidence and testimony the court relied on in its decision prior to trial 1.

The state relied heavily on this inaccurate statement to obtain conviction. The state had a giant 4 feet by 5 feet copy of this statement of which they displayed in front of the jury.

Had appellate counsel presented this 6th amendment claim the outcome of the trial, sentencing and direct appeal could have been different.

**Count 58**

<u>Cumulative effective errors by appellate counsel has deprived this petitioner of a fair trial, sentencing and appeal.</u>

The cumulative effective errors by appellate counsel within counts 50-58 have deprived this petitioner of a fair trial, sentencing and appeal.

Absent the cumulative errors of appellate counsel the outcome of the trial, sentencing and appeal could have been different.

## **Prayer for relief**

Wherefore, the undersigned, Randall B. Saunders, respectfully requests of this court:

1) That a writ of habeas corpus be issued to bring him before the court so that justice may be done;

2) that the petitioner be put in the same position that he would have been in but/for the ineffective assistance of counsel, appellate counsel or prosecutorial misconduct of the counts stated herein or any combination thereof;

3) that the convictions and sentencing described within this petition be



ordered vacated by the court and the matter be remanded to the trial

court for further proceedings according to law; or order of stay and

abeyance be granted and;

4) any and all such other relief as the law or justice require.

Respectfully submitted,

Randall B. Saunders



**TREATISES:**

Amicus curiae brief

    A.W.A.R.E., Arming Women Against Rape and Endangerment,
    Vickie Hutchinson, Esq..................................................................42

Amicus curiae brief

    Defense Associates, William Peterkin, Esq..........................................42

Dram Shop Act.................................................................................51

97

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

## APPLICATION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2254
## BY A PERSON IN STATE CUSTODY

# § 2254 BRIEF

## in Support to Excuse Exhaustion Requirement

### (with ATTACHMENTS 1- 43 contained in binder 2 of 2)

*Randall B. Saunders #253100*
*v.*
*Commissioner, Department of Correction*

**March 2010**

98

By way of the representations made herein, the petitioner respectfully requests this court to waive exhaustion and proceed on the merits of this habeas action.

**In support of this application the petitioner relies on the following exceptions:**

    1) Fundamental miscarriage of justice

        A) Actual innocence

        B) Structural error (*Brecht* FN-9)

    2) § 2254 (B)(1)(B)(ii)

Circumstances exist that render such process ineffective to protect

the rights of the applicant.

        A) Interference by officials

        B) Fundamental fairness / full and fair hearing

        C) Inordinate delay / futility doctrine

Principles of exhaustion are premised upon recognition by congress and federal courts that state judiciaries have the duty and competence to vindicate rights secured by the constitution in state criminal proceedings. Diligence will require in the usual case that the prisoner at a minimum seek an evidentiary hearing in the state court in a manner proscribed by law.

This claim has been diligently prosecuted for 4 years; every attempt to obtain exculpatory evidence has been frustrated, misrepresented and procedurally blocked from effective adjudication.

In the subject case this petitioner has sought 14 hearings specifically on obtaining the original 911 tape #26 to be played in its original format to a trier of fact.

A federal civil rights lawsuit was also filed (3:06CV1646) simply requesting a federal

99

court to recognize a due process violation and enforce rulings already in place by the state court. As of this writing, the petitioner finds himself in a "catch 22" similar to that in *Thomas v. Goldsmith*, 979 F.2d 746 (9th cir. 1992). In *Thomas* in order to overcome the procedural bar by means of miscarriage of justice exception he must supplement his claim with a colorable claim of factual innocence. A semen sample or tests thereof might enable him to make such a factual showing. However, if Thomas must make a colorable showing of innocence before the district court may order a full evidentiary hearing on his defaulted claims, Thomas is in a "catch 22". The sample if it exists is under the control of the state and Thomas has no way to test it unless the federal courts intervene but in order to make the showing which would justify intervention Thomas would need the sample.

The court wisely opined in *Thomas* as it should in this case that "we do not believe that *Thomas'* claim is defeated by this conundrum rather we believe the state is under obligation to come forward with any exculpatory evidence in its possession pursuant to *Brady v. Maryland*. We do not refer to the states past duty to turn over exculpatory evidence at trial but to its present duty to turn over exculpatory evidence relative to the instant habeas proceeding. *Thomas* has alleged that the state possesses evidence which would demonstrate his innocence and revive an otherwise defaulted ground for issuing the writ.

Under the circumstance, fairness requires that on remand the state come forward with any exculpatory evidence it possesses. If no such evidence exists the state need only advise the district court of that fact.

In the subject case the respondent for the state admitted the subject reel #26 is in the



possession of the city of Danbury but as a municipality the court lacks jurisdiction. The courts have subsequently denied any requests for further hearings on that tape. A motion for review was denied without comment.

It has been repeatedly alleged that the tape submitted to both juries has been fabricated. (See **ATTACHMENT 1**)

Prior to any trial this petitioner filed a federal civil rights lawsuit alleging fabrication of evidence, altering 911 tapes and hindering efforts to obtain exculpatory evidence, 3:98CV2333; this lawsuit and 3:06CV1646 were dismissed under the *Younger* abstention doctrine citing comity and federalism.

In *O'Sullivan v. Boerckel*, 526 U.S. 838. 844 (1999) the court opined: "Yet comity is not served by saying a prisoner has failed to develop factual basis of a claim where he was unable to develop his claims in state court despite diligent efforts. In that circumstance an evidentiary hearing is not barred by § 2254 (e) (2). Also if a prisoner has made a reasonable effort to discover the claims to commence or continue state proceedings § 2254 (e) (2) will not bar him from developing them in federal court." [1]

---

[1] Discovery attempts in state habeas corpus: **January 8, 2006 (#105.00)** Motion for judicial intervention to obtain attorney client file-hearing requested-granted-no hearing, **February 8, 2006 (#107.00)** Requests for trial court exhibits specifically copies of 911 tapes placed in evidence-hearing requested-granted-no hearing, **February 28, 2006 (#110.00)** Motion to expedite transfer of record-hearing requested-granted-no hearing, **March 21, 2006 (#112.00)** Motion to compel attorney client file-hearing requested-granted-no hearing, **April 4, 2006 (#114.00)** Motion to compel trial court exhibits-granted-hearing held, **April 10, 2006 (#115.00)** Order by *Santos* J.: prior counsel to provide entire file within 3 weeks , order to clerk to provide requested trial court exhibits by May 31, 2006 or explain why not, **May 16, 2006 (#120.00)** Motion for sanction-prior counsel still has not complied-hearing requested-denied-no hearing, **May 31, 2006 (#121.00)** Motion to expedite record from public defender's office-they claim they are not subject to prior orders of the court-this was specifically directed at them-granted-no hearing, **June 14, 2006 (#123.00)** Motion for hearing and order to determine physical location of petitioner's record-denied-no hearing, **July 10, 2006 (#124.00)** Motion directing private investigator who assisted in recording 911 tapes to relinquish file-denied without comment, **July 10, 2006 (#125.00)** Motion for clerk to clerk transfer of entire record including exhibits to be reviewed at habeas proceeding-no action to date, **July 12, 2006 (#126.00)** Motion for hearing and order to determine physical location of original 911 reel #26-motion contained 7 exhibits that were letters to public officials who have or had control over subject tape-denied-no hearing, **August 7, 2006**



*101*

This claim should be considered exhausted as futile.

After the civil rights complaint filed in 1998 alleging fabrication of evidence, the state

had to obtain a conviction to prevent redress of the complaint.

The pattern of misconduct that followed is well documented and obvious.

Our constitutional safeguards have always permitted review of a conviction wherein

manifest injustice has resulted. Procedural default in state court will not bar habeas

review of a conviction wherein the defendant can make a colorable showing of actual

innocence.

## Actual Innocence

There are two types of actual innocence claims: gateway and freestanding.

---

(#127.00) Motion for contempt-still trying to get file from prior counsel-denied without comment, **September 6, 2006 (#129.00)** Request for writ of mandamus-hearing requested-denied-no hearing, **December 19, 2006 (#130.00)** Motion for hearing and order-to again obtain 911 emergency recordings-denied-no hearing, **January 23, 2007 (#131.00)** Motion for articulation denying #130.00-basis for request cannot proceed without discovery-denied without comment, **March 5, 2007 (#131.50)** Motion for review to Appellate Court to force articulation-denied further frustrating discovery, **May 9, 2007 (#134.00)** Notice to court intend to bring up in federal review interference, **April 28, 2007** Motion for review enbanc Appellate Court-denied, **March 22, 2008 (#152.00)** Request for additional discovery once again seeking 911 recordings-this costly motion contained a copy of the entire record both trials as well as motion practice to establish state's evasive quest-denied-respondent ordered to once again preserve 911 tape- 4th Superior Court judge to do so-no access to date, **April 30, 2008 (#157.00)** Respondent's reply to 911 tape request-now machine broken again and discarded-respondent claims petitioner has copies-prior response was state doesn't know where the tape is but now claims municipality of Danbury, Connecticut not subject to Superior Court orders, **May 7, 2008 (#158.00)** Reply to respondent's nonsense-this notice also claims federal due process violation pertaining to violation preventing full and fair hearing to develop facts concerning 911 tape #26, **June 11, 2008 (#163.00)** Application for subpoena duces tecum for medical findings to disprove shots on 911 tape-denied.

Also see: *Carriger v. Stewart,* 132 F.3d 463, 478-79 (9th cir. 1997) cert. denied, 523 U.S. 1133 (1998)) Petitioner satisfied the miscarriage of justice exception because it is more likely than not that no reasonable juror hearing all of the now available evidence would vote to convict beyond a reasonable doubt. *Fairman v. Anderson*, 188 F.3d 635, 645 (5th cir. 1999) Petitioner satisfied actual innocence exception by presenting evidence of self-defense that made it not just possible but more likely then not that no reasonable jury would convict him.



In a freestanding claim of actual innocence there is no claim of antecedent constitutional violation that affected the result of the criminal trial.  Such a freestanding claim is to be contrasted with what has come to be known in federal habeas jurisprudence as a gateway claim of actual innocence.  Such a claim serves as a gateway to permit federal habeas review of an otherwise procedurally barred state conviction that the petitioner asserts is constitutionally flawed.

It is a claim based on an antecedent constitutional violation that affects the results of the criminal trial, *Miller v. Commissioner*, 242 Conn. 745, 788 n 28 A.2d 1108 (1997).

In this case it is the latter; the petitioner can show actual innocence by way of a unanimous jury verdict of not guilty. (See **ATTACHMENT 2**)

This application is best described and compared to *Britz v. Cowan*, 192 F.3d 1101, 1103 (7th cir. 1999). Waiver will be forgiven if petitioner can show that he is actually innocent and not merely legally innocent of the criminal charges against him.  The state argues that this means *Britz* must show that he didn't kill his victim and it is conceded that he did. This takes too narrow a view. One can kill yet be innocent of murder. Suppose *Britz* were the public executioner prosecuted for the murder of a capitol defendant which he legally executed.  He would be actually innocent even though he actually pulled the trigger.

It is the same when an accused murderer has an affirmative defense of insanity.  If acquitted on the grounds of insanity he is actually innocent.

This application to the subject case would also conclude "actual innocence".

In a single count self-defense case with a sole defense of self-defense or justification, a unanimous jury verdict of not guilty to manslaughter in the first degree with a firearm - intentional conduct is "actual innocence".

Once self-defense is claimed as the only defense, one is either guilty of intentional harm



*103*

or not guilty by way of justification.

*A unanimous not guilty verdict is a legal fact in this case.*

A claim of actual innocence itself is not a constitutional claim, even existence of concededly meritorious constitutional violations it is not itself sufficient to establish a miscarriage of justice exception that would allow a habeas court to reach the merits of a barred claim.

However, if the petitioner presents evidence so strong that a court cannot have confidence in the outcome unless the court is <u>also</u> satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the "gateway" and argue the merits of his underlying claim. *Shlup v. Delo*, 115 S. Ct. 851, 63 U.S. L.W 4089 1995 S.Ct. 40424 at [42].

As stated in prior text, it has been alleged since the inception of this prosecution that the state has discarded statements, destroyed evidence and altered 911 tapes. It has also been alleged that the state has to obtain a conviction to prevent redress of that civil action. In doing so the following is an exemplary list of structural errors during trial that occurred without objection.

### **<u>Structural errors</u>**

In conducting harmless error analysis of constitutional violations in direct appeal and habeas corpus cases the Supreme Court of the United States has repeatedly reaffirmed that some constitutional violations by their very nature cast so much doubt on the trial process that as a matter of law can never be considered harmless...

<u>Application to this habeas action:</u>

- Ineffective assistance of counsel
- Prosecutorial suppression of exculpatory evidence
- Protection against a directed verdict for the state
- The right to a unanimous jury verdict



- 5th amendment requirement of proof beyond a reasonable doubt; that is a right to a jury verdict of guilt beyond a reasonable doubt.
- Structural errors under *Brecht* FN-9
- Structural error also occurs when the court allows the defense to be ambushed by an instruction that changes the theory of the case at the last minute.

**Ineffective assistance of counsel**

Allegations within counts 1-19 allege trial counsels failure to subject the prosecutor's case to any meaningful adversarial testing. In the subject case trial counsel presented no expert testimony challenging any aspect of physical evidence presented by the state. This action or lack thereof renders the adversarial process presumptively unreliable. No specific showing of prejudice is required because the petitioner has been denied the right to effective cross examination which would be constitutional error in the first magnitude and no showing of want of prejudice would cure it. *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L.Ed.2d 347 (1974)

Allegations within counts 21-23, 25-26 trial counsel failed to object to a charging instrument that charges two separate crimes in the alternative. Connecticut jurisprudence deems this as fatally flawed in any information charging in this fashion. Federal law also prohibits this as failure to adequately provide notice to the defendant.

**Prosecutorial suppression of exculpatory evidence**

As discussed in prior text, the prosecution within the criminal trials of this petitioner withheld the original 911 emergency transmissions which prove the decedent was armed and was the first to use deadly force. This tape which is still in the custody of the state E-911 system has never been played in its original format; state's exhibit 69 is a fabricated tape which is out of numerical order. Please see **ATTACHMENT 1** which is a



copy of state's exhibit 69.

The prosecution also destroyed bullets, bullet fragments and other material evidence including testimonial evidence, witness statements, photographs and scientific conclusions.

**Protection from a directed verdict for the state**

Count 24 alleges trial counsel failed to object to the trial court's instruction effectively directing a verdict in favor of the state.

The trial court instructed the jury as the last instruction before verdict:

> "I'm going to make it clear regarding the issue of the count, the alternative means the state has charged or alleged in committing manslaughter your verdict on either alternative must be unanimous. If you decide on the intent it must be unanimous. If you decide on the reckless portion it must be unanimous, you do not need to decide both just decide one. Either intent based on your view of the evidence and law or reckless based on your view of the evidence and the law. Decide one of them."

This is a directed verdict for the state and trumps the defense of self-defense.

**The right to a unanimous jury verdict**

In this case and attached as **ATTACHMENT 2** is the written verdict from the jury.

The jury unanimously found the petitioner not guilty of intentional manslaughter which should have been dispositive of the entire criminal proceeding.

Once self-defense/justification is claimed and allowed by the judicial authority a defendant is either guilty of intentional harm or not guilty by way of self-defense or justification.



**5th amendment requirement of proof beyond a reasonable doubt; that is a right to a jury verdict of <u>guilt beyond a reasonable doubt</u>.**

As described above the last instruction to the jury is a directed verdict for the state. It also unconstitutionally reduces the burden of the prosecution to disprove every element of self-defense.

With a claim of self-defense a choice of reckless or intentional conduct changes the question of justification and will result in conviction 100% of the time.  This result is collateral damage as a result of a fatally flawed charging instrument.

The subsections of manslaughter § 53a-55a are not alternative means, they are separate and distinct crimes each requiring different elements to obtain conviction.

See also brief (#203.00), **ATTACHMENT 3**

**Structural error under *Brecht v. Abrahamson*, 507 U.S. 619 (1993) Footnote 9**

The unusual case in which there occurs a deliberate and especially egregious error of the trial type or one that is so combined with a pattern of prosecutorial conduct as to infect the integrity of the proceedings to warrant the grant of habeas relief even if it did not substantially affect the jury's verdict, Footnote 9 is assimilated to structural error and declared to be incapable of redemption by actual prejudice analysis.

<u>Pattern of egregious prosecutorial misconduct in convicting trial</u>

- Filed substitute long form information 14 days prior to trial charging two separate crimes conjunctively creating an indefensible charge.
- Suppressed and destroyed exculpatory evidence (911 tapes, bullets, bullet fragments, witness statements…)
- Fabricated evidence (911 tapes, scientific conclusions based on fabricated evidence)
- Elicited perjurious testimony regarding authenticity of fabricated evidence.
- Issued subpoena duces tecum to petitioner's power of attorney requiring her to produce entire defense case file within 16 hours and the judge enforced it. (See **ATTACHMENT 4**) Count 46



- Repeatedly referred to suppressed and fabricated evidence within initial closing argument. Count 37
- Highlights within initial closing arguments on at least 7 different occasions that the petitioner did not testify. Count 39
- Vouched for the credibility of the state's witnesses within initial closing argument. Count 40
- Repeatedly shifts the burden of proof to the petitioner to prove he acted in self-defense. Count 41
- Repeatedly misstates the law regarding a prevaricated warning throughout trial and highlights on 25 separate occasions within his initial close that the petitioner must be guilty of some sort of criminal liability because he never "warned" the decedent or complied with this nonexistent warning requirement. Count 42
- Frequently expressed his personal opinion within closing arguments regarding the guilt of the petitioner.
- Displayed his written thoughts during closing arguments for the exclusive view of the jury with the instruction to "think about them later". Count 43
- Made extraneous statements known to be false to the newspaper to taint and influence the potential jury pool. Count 44 (**ATTACHMENT 5**)
- Obtained highly prejudicial statements from named witnesses and presented them to the court hours before sentencing. The subject matter in these statements was proven patently false. This tactic prevented confrontation of testimonial evidence. Count 45

**Structural error also occurs when the court allows the defense to be ambushed by an instruction that changes the theory of the case at the last minute.**

As stated above, the jury instruction as the last instruction to the jury to "just decide one" ambushed the defendant and created an indefensible charge that resulted in a conviction not based in evidence or plea of the petitioner.

An exception to the exhaustion requirement is warranted in this case.

As stated within, a miscarriage of justice claim with a colorable showing of actual innocence should allow adjudication without exhaustion. Other factors to excuse exhaustion can be found in *Aparicio v. Artez*, 269 F.3d 78, 90 (2nd cir. 2001)

**Futility and inordinate delay**

The Second Circuit has excused exhaustion as futile when presentation of the claim



would be barred by a state court or when the petitioner would be subjected to inordinate delay.

*How long does a defendant with a unanimous not guilty verdict have to remain in prison? It has been 13 years; over half of that time has been in the habeas court trying to obtain exculpatory evidence.*

This inordinate delay is becoming a defense for the state rendering these attempts futile. The evidence is within the state's custody and control (both prosecution and defense).

As stated above the state had to obtain conviction to prevent redress of the civil complaint. As an act of desperation this petitioner sent invitations (**ATTACHMENT 6**) throughout the state to invite public officials to witness first hand the blatant corruption. These went out before any trial. The courts just kept changing the date of trial but were aware of the complaint.

Another significant factor preventing meaningful adjudication and inordinate delay is:

### Interference by officials

On May 9, 2007 this petitioner filed a notice with the court (#134.00) (**ATTACHMENT 7**) which stated:

"The petitioner in the above captioned habeas action hereby gives notice that he intends to raise at trial and preserve for further review the issue of whether the trial courts denial of discovery motions can constitute state or government interference within the cause and prejudice standard. The above question of law is unresolved within habeas corpus in Connecticut but appears as an intentional tactic reflected within the court's docket. This notice relates to both past and future denials of motions #120.00, #123.00, #125.00, #126.00, #127.00, #129.00, #130.00, #131.00, and also the Appellate Court ruling of April 25, 2007 denying



motion for review. All denied without comment."

The inaction of the state courts has effectively precluded this plaintiff from proceeding within the state judicial system.

Office of the State's Attorney: prosecutor

As provided in prior text, the state's attorney in this matter has destroyed exculpatory evidence, fabricated evidence, destroyed witness statements and elicited false testimony.  Specific examples are within this complaint.

Office of the Chief State's Attorney: respondent for the state (habeas)

The respondent for the state has never responded to any request for discovery without a specific order from the court.  In the instance the court ordered response, the state was defaulted for non-compliance.  Once the state recovered from default, it filed an objection to a motion for summary judgment (one year had passed) within that motion the respondent blatantly misstates the law and subsequently misapplies supporting case law. See **ATTACHMENT 3**, relief motion brief, for further argument. The state took one year to produce this voluminous document and convinced a court to have oral arguments 4 days after it was sent; one business day after received. The motion had to be withdrawn. Also **ATTACHMENT 8** is motion # 130.00. It was denied without comment.  This further explains the intentional tactic of inordinate delay.

Respondent's reply to 911 tape #26

The respondent for the state replied (#152.00 dated March 22, 2008) to an additional motion for discovery:

"I understand that prior to your criminal trial your counsel and experts retained by him were given access to the original recording of the 911 telephone calls of January 26, 1997.  I do not possess and do not know where the original may now



be found. Nevertheless, I am enclosing a copy of that recording."

The tape the state provided was a single call back from the police department; it does not contain a single E-911 call from the crime scene.

A copy of motion #152.00 is **ATTACHMENT 9**. It clearly articulates the intent of obtaining this recording and the dilatory acts this far in obtaining that tape. A complete record was provided with this motion.

**ATTACHMENT 10** is motion #157.00 of April 30, 2008. This is a reply to motion #152.00. Within this motion is the state's new theory on how to prevent tape 26 from being played in its original format.

Of particular interest is the respondent's claim the municipal fire department is not a party to this civil action and therefore the court has no jurisdiction and is without authority to issue such an order.

This subject matter was also attacked within the recent § 1983 civil rights action which was dismissed without service.

Also in **ATTACHMENT 10** (#157.00 at 4):

> "The respondent has contacted Patrick Sniffin, communications coordinator for
> the city of Danbury fire department. After conducting a search Sniffin located
> tape #26 and that tape remains in the possession of the fire department. The
> department however is unable to play this tape because the equipment used to
> record and play those transmissions was damaged by fire and then thrown
> away."

Sniffin testified that in March of 1997 fire destroyed one of the motors in the tape machine. (See habeas volume 3, document 24, pg. 15, lines 24-27)

Then Sniffin testified and prosecutor Murray claimed: "In June of 97 the 911 system was switched." (See habeas volume 1, document 9, pg. 42, lines 8-9)



Obvious question: Was the city of Danbury without 911 system for 3 months?

On April 10, 1998 the defense was allowed to access recording machine. The defense presented at the E-911 center at the New Street fire station with a sound technician and a service technician from the Dictaphone Corporation.

In **ATTACHMENT 11** are 2 invoices:

    1) from Presence Studios, they recorded off the machine <u>after</u> it was repaired;

    2) from the Dictaphone Corporation, for fixing the subject machine. It was a minimum charge because they simply had to plug the machine in for it to operate.

It is a reasonable conclusion that this machine was operable and in service by Sniffin's own admission until June of 1997 when it was taken out of service. It was stored and in working condition.

Four Superior Court judges preserved the subject tape: *Groggins, J., Radcliff, J., Moraghan, J., and Schuman, J.* The next best thing to prevent this tape from being played is to destroy the machine. The judges didn't preserve that.

**ATTACHMENT 12** is a recent correspondence from communications coordinator Sniffin in which he claims "there are no model numbers or serial numbers" to further frustrate locating a machine. Please note in the Dictaphone service invoice: model #9302 serial number #314093.

The tape that was produced on April 10, 1998 was a single copy in the sole possession of attorney Philip Russell who was counsel at that time. Russell was paid in excess of $30,000. These runarounds were very expensive and exhausted funds rapidly. There was no money left for Russell so Russell left.

**ATTACHMENT 13** is an affidavit from Debra O'Brien who was the legal secretary for Russell; at his direction O'Brien placed the sole copy of the subject tape in



a basket in some hallway where it was never accounted for again. Notably Russell lost his law license for destroying evidence in a federal prosecution.

Courts

Moraghan, J.

The court, *Moraghan J.*, was presiding judge during pre-trial hearings as well as the first criminal trial. Defense attorneys were refused entry to the crime scene that was an operating restaurant in Danbury doing business as Tortilla Flat Restaurant. The owners claimed it was privately owned and not subject to orders of the state directing entry. Entry was frustrated for over 2 years.

The restaurant was licensed by the state. It had a valid liquor license, sanitation license, food service license and current fire inspections. The judge repeatedly refused to direct entry stating the state is without authority. This is a misstatement of law. The state clearly controls who goes into this restaurant.

28 months after the shooting defense attorneys were allowed one hour to photograph, measure and compare preliminary findings of the crime scene technician.

Prior to entry (2 years later) it was discovered that by the owners' admission, before opening the restaurant they "added a huge kitchen and tripled the size of the bar." (See **ATTACHMENT 14**) Such a large renovation would require building permits authorizing a major renovation to a public building.

**ATTACHMENT 15** is the assessor card on file in July of 2004 detailing the permit history. Please note there has never been a permit but admittedly work was done. Also note the seating capacity on assessor card is 100 and in Dennis Keeler's 2001 deposition testimony the capacity is 144. There is a 44% difference. (See **ATTACHMENT 1**, pg. 21) The significance in this as applied to this case is it's the state's position and also the Connecticut Supreme Court that the petitioner could have easily walked out "clearly

marked exits". **ATTACHMENT 16** contains pages 280-82, 286-88 of state habeas exhibits depicting these doors, also a photo taken 1 day prior to the defense scheduled arrival; one with paint can and screw driver with paint mix.

By not allowing immediate access this petitioner was severely prejudiced.  This is further alleged within the habeas complaint.

After tens of thousands of dollars in legal fees the court, *Moraghan, J.*, states in a hearing of April 6, 1998 that a complete file from the investigating officer was to be on file and affidavit stating this fact was to be within said file no later than April 13, 1998. This too was never done prior to the second trial.  This petitioner requested a copy of that affidavit. The clerk finally revealed on or about March 16, 1999 (over a year later) an envelope appeared stapled on the inside of the file marked "police affidavit" but it also was *sealed* per order of *Moraghan, J.* The officer who claimed to be in charge of the crime scene and investigation was never called as a witness. Further requests by certified mail to judge Moraghan went unanswered; also a motion to unseal was denied without comment. This prevented confrontation of the unidentified officer who was in charge. Motion #111.00 is **ATTACHMENT 17**; it explains this process.

- Peter DeForest was hired by the defense to perform gunshot residue tests on the  state's findings.  He was paid in excess of $8000 when he presented at the state lab to compare findings to those of the state he was refused.  A motion to compel was filed, the state filed an objection and a ruling by *Moraghan, J.* precluded comparisons of these findings.

Attorneys for the defense presented no expert testimony regarding the findings of the state and those findings went unchallenged in both trials.

- On February 2, 2000 a subpoena duces tecum was served on this petitioner's power of attorney. (See **ATTACHMENT 4**) Patricia Joy is the petitioner's power of

*114*

attorney and is the legal custodian of his legal files.

Power of attorney designation was intentional and specific to protect against 3rd party waivers during all litigation concerning this prosecution. This subpoena commanded Joy to produce the entire file and surrender it to the prosecution in this case within 16 hours.

**ATTACHMENT 4** contains the transcripts of that hearing. Judge Moraghan wasn't hearing any objection to this patently illegal subpoena, in fact, he makes excuses for the prosecution to make this appear legal. Of particular interest is the page where the judge tells Joy it would be a good idea to obtain an attorney but then over the petitioner's objection orders her to relinquish the entire work product case file to the prosecution. The petitioner is told to "Shhhh...." by his trial counsel.

Fuger, , J.

- **ATTACHMENT 18** is an Appellate Court motion for review dated March 5, 2007 which explains this petitioner will not be able to proceed without previously ordered discovery. Motion denied without comment.

- In the hearing of December 8, 2008 this petitioner entered into an agreement with the court, *Santos, J.*, (**ATTACHMENT 19**, transcript pgs. 3-6) in which the state public defender's office would supply 2 or 3 names of attorneys of which one should be chosen.

**ATTACHMENT 20** is a letter clarifying the order of the court to Adele Patterson, chief of habeas corpus services, dated February 9, 2009.

A motion to compel was filed to expedite this agreement #195.00. A hearing was set for April 30, 2009. The transcripts are **ATTACHMENT 21**. The petitioner was notified by the court but not transported to the hearing. At that hearing without knowledge or consent Patterson filed an appearance and subsequently appointed H. Jeffrey Beck, Esq. to



represent this petitioner.

This petitioner immediately faxed a notice to the court (#196.00) and to Beck informing them once again of the agreement with the court, *Santos, J.*, and that this petitioner will remain pro se.

On June 1, 2009 this petitioner was summoned to court. (**ATTACHMENT 22**, transcripts) On page 3 of these transcripts *Fuger, J.* clearly and unequivocally revokes offer of counsel by *Santos J.* without articulation. *Fuger, J.* appoints Beck once again. It is made clear on page 6 that Beck is to obtain expert witnesses.

On August 7, 2009 at a status conference (**ATTACHMENT 23**, transcripts) Beck has agreed to go forward with the pro se petition filed by the petitioner. He also agrees to the scheduling order of the court to proceed to trial.

The trial was to occur on November 24-25 of 2009. A copy of that order is within **ATTACHMENT 23**. Any continuance must be filed at least 7 days prior to scheduled event. Two letters sent to Beck requesting and reminding him of trial and other scheduling orders all went unanswered. (**ATTACHMENT 24**)

On November 20, 2009 this petitioner filed a motion to dismiss counsel. This was just 4 days prior to scheduled event; otherwise this trial would have proceeded. No other motion would have been accepted by the clerk. This was faxed and received at 8:05 a.m. on November 20, 2009. Someone alerted Beck who filed a motion for continuance at 11:35 a.m., one business day before trial.

Reflected within the transcripts of this motion to dismiss counsel (**ATTACHMENT 25**) this petitioner made it clear to court that Beck has not met one single scheduling order, has not contacted one single expert witness, has not filed for additional funds to obtain experts, has not done a single thing except bill the state for reviewing the file. There was no possible way Beck could have been ready for this trial.



The court, *Fuger, J.*, denied motion to dismiss and proceed pro se claiming this petitioner has not shown a valid reason to remove Beck as counsel.

State appointed counsel

As mentioned above it appears to be an intentional tactic to create inordinate delay to prevent the criminal activities of the state from being adjudicated. As stated in prior text the state had to obtain conviction to prevent redress of the civil complaint that was filed in 1998 alleging the same misconduct that is alleged today with exception that now this petitioner can prove them clearly and convincingly.

State appointed counsel (after attorney Philip Russell lost or destroyed the sole copy of the original 911 tape)

Dennis P. McDonough, Esq.

McDonough is an attorney the public defender's office assigned to discourage trial. McDonough has never won a criminal trial and has withdrawn from every case that he could not persuade his client to plea out. This was the case in this appointment.

Robert Field, Esq., Rosemary Chapdelaine, Esq.

This is the public defender in the judicial district of Danbury. As stated in prior text and within this habeas complaint Field never challenged any clearly erroneous findings of the state regarding 911 tape, state's exhibit 69. He stated in open court:

"I've already indicated when I allowed this into evidence that I heard the reel to reel[2] and we have been provided with exactly what was on that reel to reel and I have no objection to it being admitted."

Also Field had experience of well over 20 years in Connecticut law. He knew or should have known that a charging instrument charging two crimes conjunctively accompanied with a jury instruction to "decide one" was patently unfair and would result in a

---

[2] As shown in **ATTACHMENT 1** the tape cannot be as presented and Attorney Field came into this case well after the 911 tape machine was "destroyed by fire".



conviction.  Field was protecting the state by further covering up the criminal evidence
tampering.

<u>Appellate Attorney Lisa Steele</u>

Steele never appealed any aspect of the jury instructions, in fact the Supreme Court
opined at [103]:

> "We note that the defendant does not challenge the propriety of any aspect
> of the trial court's instructions on self-defense."

*How many unanimous not guilty verdicts does it take in a single count self-defense
case?*

<u>State appointed habeas counsel, Walter Bansley III, Esq.</u>

Bansley's association with this case is considered malpractice by state and federal
standards but bears strongly on the issue at bar; creating inordinate delay.

Bansley was appointed counsel and filed an appearance in June of 2004.  On
July 27, 2005 the application was withdrawn citing he didn't have complete transcripts.
Bansley further states he will resubmit in probably 4-5 months. (**ATTACHMENT 26,**
transcript pg. 1, lines 15-23)

A motion for continuance would have been common and appropriate.  Bansley is also
admitted to practice in federal courts.  He is well aware of the AEDPA tolling statute to
which he obliterated half of the time allotted for federal review.

This petitioner not being a lawyer started to research state and federal habeas law and
discovered the tolling statute.  This petitioner immediately started trying to contact
Bansley who appeared at MacDougall correctional institution and filled out another
standard form for habeas relief. (**ATTACHMENT 27**) Several more weeks passed until it
was discovered Bansley never filed this application and abandoned the case.

Another pro se application for habeas relief was filed on February 3, 2006 (4 years ago)

and is currently pending .

**ATTACHMENT 28** is motion #123.00. It clearly explains that without Bansley's files the petitioner is "dead in the water" and cannot proceed to resolution.

To date the complete file has been lost or destroyed. Motion #123.00 was <u>denied</u>.

<u>State appointed attorney for state appointed attorney</u>

Deborah Del Prete Sullivan has been appointed to serve as counsel to Field and Chapdelaine. Both were trial counsel within both trials of this petitioner.

Del Prete Sullivan has been the respondent on motion #174.00, **ATTACHMENT 29**. She is in possession of work product; specifically she is in sole possession of 911 tapes that are owned by this petitioner. This petitioner hired the services of Presence Studios to retrieve the 911 tape in its original format. After several years she still has failed to produce the tape that was made on April 10, 1998. The transcript of the hearing is **ATTACHMENT 30**. Within that hearing Del Prete Sullivan agrees to supply a tape bearing that date. Also attached is letter dated November 10, 2008 concerning this specific tape. (**ATTACHMENT 31**)

**ATTACHMENT 32** is the tape provided in which Del Prete Sullivan claims it is original. Simply put, there is no time stamp on this tape. It can't be the original.

It is an enhanced copy which you can clearly hear 6 shots 5 seconds into the tape, and is not in sequential order. (See **ATTACHMENT 1** - 911 tape)

No further tapes were ever provided despite repeated requests.

- Del Prete Sullivan is in possession of the findings of crime scene forensic pathologist Peter DeForest but will not supply copies further frustrating discovery. DeForest was paid $8,680 by the state. DeForest will not respond to my requests.

- Blood evidence was taken by crime scene technician for the defense. It shows blood splatter in the opposite direction of shots fired by this petitioner further supporting



the theory that the decedent shot himself as he attempted to draw his weapon. (Count 18) **ATTACHMENT 33** is pages 127-131 of the state habeas exhibits that show where and when these samples were taken.

**ATTACHMENT 34** is a letter from Del Prete Sullivan informing this petitioner the blood evidence is *missing*.

The building has been torn down since the incident; in 2006 the Keeler's sold Tortilla Flat Restaurant, after 30 years in business.  **ATTACHMENT 35**

This blood evidence as well as DeForest's findings are originals. DeForest performed destructive tests that can't be redone. Blood evidence would have produced DNA and been conclusive evidence.  The petitioner could not be on both sides of the decedent in 2 seconds. (Listen to shots fired, see **ATTACHMENT 36**)

Interference by court clerks

The clerks within state habeas courts have consistently frustrated filings, returned documents for no valid reason and have completely lost motions.

- Motion for Review (#131.50) **ATTACHMENT 18**

A motion for review was filed with the Appellate Court to review decisions that frustrated discovery.  This motion was filed pursuant to Connecticut Practice Book standards; an original and 3 copies. This voluminous motion was in excess of 100 pages. It was filed within the 20 day statute. It was sent to the Appellate clerk, after several weeks of inaction this petitioner was informed that the motion had been lost or never arrived. These motions were sent certified and arrived at their location.  This petitioner was instructed to file permission for a late filing.  **ATTACHMENT 37** is this motion #132.00. Several hundred dollars more was spent recopying 4 copies of this motion that exceeded 100 pages.  It was filed on time.

It should be mentioned that this motion for review was returned 3 separate times.



After one day the petitioner was notified that all copies have been located and all are denied without comment; Appellate Court orders are included with **ATTACHMENTS 38 and 18.**

A motion for review en banc (#135.00) **ATTACHMENT 38** was filed and is clearly stating this petitioner cannot proceed without requested relief...denied.

Pleading #134.00 was the notice to court to preserve for further state and federal review of state and government interference. (**ATTACHMENT 7**)

• This petitioner is obviously incarcerated and is reliant on his power of attorney to process his work product. He is limited to six cubic feet of possessions; his legal file far exceeds that restriction.

A pattern of preferential filing has occurred.

This petitioner must follow the rules of court by filing for extensions of time to file responses in order to obtain supporting documentation from his power of attorney who is located out of state.

The most recent is a continuation of the courts unreasonable efforts to keep this appointed counsel on this case.

**ATTACHMENTS 21-22** clearly explain Beck's involvement with this habeas action. Prior to the hearing of January 7, 2010 this petitioner filed a motion for continuance. The reason for this motion (**ATTACHMENT 39**) was simply because the department of correction had intercepted work product pertaining to this hearing and instead of delivering it to the petitioner, placed it in the processing building for incoming inmates. It wasn't received until after the hearing. On page 1 lines 11-16, the court, *Fuger, J.*, was asked what happened to the subject motion; he said it was returned as improperly filed. Returned to whom? This question still remains open.

**ATTACHMENT 40** is a letter with exhibits to the administrative judge, Elliot N. Solomon,

(121)

clearly explaining these acts of interference and requesting assistance. It was returned.

**ATTACHMENT 41** is the returned document form and that inquiry stating this is an

"ex parte communication". Clearly it is not.

On page 6 of **ATTACHMENT 25**, January 7, 2010 hearing, this petitioner asks the second

time what happened to this motion and is simply told, "O.K. Mr. Saunders, this is not an

opportunity for you to address anything you wish to address…"

- On February 8, 2010 after a trial date appeared on the judicial website, this

petitioner by way of his power of attorney requested a copy of the scheduling order that

accompanies a firm trial date.

**ATTACHMENT 42** is a 3-page document which is the request and the information that

was sent. Please note the scheduling order; these dates have come and gone and have

not been met.  This was the subject matter of the motion to dismiss. (**ATTACHMENT 25**)

Another point of argument is the printed remark. "This trial date is final."

There is no possible way state appointed counsel can be prepared for a trial of this

magnitude.

Beck has a long history of not prosecuting cases, and the predicted result is

another application of the state's defense: inordinate delay; another habeas counsel

which will take years. (**ATTACHMENT 25**, pg 2, lines 4-20)

- In 1998 this petitioner entered into an agreement with the department of

correction.  This agreement allowed "legal correspondence" marked as such from this

petitioner's power of attorney be opened in front of him to preserve work product

privilege.

This agreement has been in existence and honored since 1998.  Now the attorneys

general office has verbally withdrawn this agreement without notice.



A request to base their decision on fact and law has gone unanswered.

The prejudice that resulted from this act is explained above; department of correction intercepted work product and clerk lost motion for continuance.

Within this section of "Interference by state officials" it clearly shows that inordinate delay is the defense of the state.

The attachments within this application show that it would completely undermine the state's conviction should the requested discovery be put before a trier of fact; however, exhaustion should be excused because the corrective process is futile.

Under § 2254 (B) (1) (B) (ii) this statutory exception from exhausting ineffective state corrective process applies even if the state remedy remains at the time the federal petition is filed and the fact that the state court failed to address the claim explicitly does not render it unexhausted. States courts may not thwart the exhaustion requirement by refusing to rule or rule inconclusively.

### Conclusion

The petitioner respectfully requests an exception be granted and allow this action to proceed on the merits.

The threshold legal questions of a miscarriage of justice claim have been clearly represented within.

In 1998 this petitioner brought forth a civil rights action claiming the exact same allegations of evidence tampering, destroying evidence and altering 911 emergency transmissions. Now 13 years later he finds himself back with in excess of 40 trial court exhibits in support of that claim.

State appointed attorneys, both prosecution and defense, have not in any proceeding addressed the giant purple gorilla that has leered over this case.

Defense counsel actually assisted the prosecution to fashion an indefensible crime and

123

jury instruction. This resulted in a conviction that is constitutionally impermissible.
In this case there were 2 trials; one was a murder trial in which the jury was hung.
Defense attorneys requested the court, *Moraghan J.*, to poll the jury to see what charge
they were hung on; the greater or lesser included. Judge Moraghan refused. The state
maintained they were hung on the murder charge but retried this petitioner on
manslaughter in the first degree with a firearm conjunctively charging 2 separate crimes
and directing the jury to "decide one".

As stated within, the state had to obtain conviction to prevent redress of the civil
complaint. State interference spans from the state's attorney office to the state police
crime lab, medical examiner's office to the office of the chief public defender. All state
agencies which render this action in state court futile.

This is the only case in Connecticut to be charged and a conviction obtained in this
fashion. It is patently unfair and against state and federally protected constitutional
rights.

In Justice Black's admonition within *Brown v. Allen*, 344 U.S. 443, 554 (1953) dissenting
opinion, also appropriate in this application:

> "It's never too late for courts in habeas corpus proceedings to look straight
> through the procedural screens in order to prevent forfeiture of life or liberty
> in flagrant defiance of the constitution."

The court should rule in favor of this petitioner to prevent needlessly postponing final
adjudication that has perversely prolonged this injustice.

After all:

> *How many unanimous not guilty verdicts does*
> *it take in a single count self-defense case?*

***



Respectfully submitted,

Randall B. Saunders, petitioner

125

## CERTIFICATE OF SERVICE

On __MARCH 17__, 2010 I served the application and brief (binder 1 consisting of 130 pages) with 43 ATTACHMENTS (binder 2 consisting of 351 pages) within by depositing a true copy thereof in a postage prepaid envelope in a depository within the exclusive care of the United States Postal Service addressed to all parties of record.

_RBS_

Randall B. Saunders, petitioner


State of Connecticut
Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120


Randall Saunders #253100
Enfield Correctional Institution
289 Shaker Road
P.O. Box 1500
Enfield, CT 06082



UNITED STATES DISTRICT COURT   2 i5 PM '99

DISTRICT OF CONNECTICUT

RANDALL B. SAUNDERS

    v.

WALTER D. FLANAGAN, et al.

PRISONER
Case No.   3:98cv2333 (CFD)

## J U D G M E N T

This cause came on for consideration on the defendants' motions to dismiss before the Honorable Christopher F. Droney, United States District Judge.

The court has considered the motion and all related papers.  On August 4, 1999, the Court filed its Ruling on Motion to Dismiss granting the defendants' motions and dismissing the case in its entirety.

Therefore, it is **ORDERED** and **ADJUDGED** that judgment is entered in favor of the defendants and the action is dismissed.

Dated at Bridgeport, Connecticut this 11th of August, 1999.

KEVIN F. ROWE, Clerk

By _Donna Thomas_
Donna P. Thomas
Deputy Clerk

(127)

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

RANDALL B. SAUNDERS                 :
                                    :           PRISONER
      v.                            :   Case No.   3:06cv1646(AHN)
                                    :
WALTER C. BANSLEY III, ET AL.       :
                                    :

### RULING ON MOTION FOR RECONSIDERATION

On February 1, 2007, the court dismissed the plaintiff's complaint pursuant to the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37, 49, 53-54 (1971). The plaintiff now asks the court to reconsider its ruling dismissing the complaint.

The standard for granting a motion for reconsideration is strict.  See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration permits the court "to correct manifest errors of law or fact or to consider newly discovered evidence . . . ." LoSacco v. City of Middletown, 822 F. Supp. 870, 876-77 (D. Conn. 1993), aff'd, 33 F.3d 50 (2d Cir. 1994) (internal quotation marks and citation omitted).

The plaintiff contends that the court erred in dismissing the complaint pursuant to the 28 U.S.C. § 1915 because he did not file this action in forma pauperis. Although the plaintiff paid the filing fee to commence this action, section 1915(e)(2) permits a court to dismiss a complaint at any time, "[n]otwithstanding any filing fee . . . that may have been paid," if the court concludes that "the action . . . is frivolous or malicious; [or] . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. §

(128)

1915(e)(2)(B)(i) and (ii).

The plaintiff also contends that the court erred in concluding that the *Younger* abstention doctrine applied to the facts of the complaint. He argues that no avenue for review of the constitutional claims set forth in his state habeas petition exists in state court. The plaintiff does not indicate that he is foreclosed from appealing any dismissal of the state habeas petition. In fact, the current docket sheet for plaintiff's state habeas petition reflects an entry regarding an appeal as well as entries regarding the filing of a notice and a new motion by the plaintiff and an order granting plaintiff's motion to waive fees and costs. See Saunders v. Warden, Case No. TSR-CV-06-4000933-S.

Accordingly, the Motion for Reconsideration [**doc. # 4**] is **GRANTED**. After careful reconsideration, the Ruling and Order dismissing the complaint [**doc. # 2**] is **AFFIRMED**.

**SO ORDERED** this __28__ day of ___August_, 2007, at Bridgeport, Connecticut.

_____/s/_____
Alan H. Nevas
United States District Judge

2

3:06-cv-1646(AHN)

Randall B. Saunders
Inmate 253100
MacDougall C.I.
1153 East Street South
POB 6490
Suffield, CT 06080

Note: You may receive notice that the court has electronically filed an order.  You
also may receive documents or orders that have an electronic signature. Which
appears as "/s/" on the signature line.  These documents are properly filed.

*130*