# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
|  |  | PRISONER |
| RANDALL B. SAUNDERS | : | CIVIL NO. 3:10-CV- 410 - (MRK) |
|  |  |  |
| v. | : |  |
|  |  |  |
| COMMISSIONER OF CORRECTION | : | OCTOBER 15, 2010 |

### RESPONDENT'S MEMORANDUM IN OPPOSITION TO "MOTION FOR  JUDICIAL INTERVENTION" (Doc. #21)  AND IN RESPONSE TO ORDER TO SHOW CAUSE

On October 5, 2010, petitioner filed a motion captioned "Motion for Judicial Intervention" purportedly signed by the petitioner *pro se*, with the initials "RBS."  On October 8, 2010, counsel for the respondent Commissioner of Correction ("Commissioner"), from the Office of the Chief State's Attorney contacted the undersigned counsel for the Commissioner, and on said date undersigned counsel sent an appearance to this Court, which was filed October 12, 2010.  The petitioner's pending motion concerns policies, procedures, directives, and state regulations governing incoming social mail from a purported friend of the petitioner, Patricia Joy, an individual who is identified as being a non-lawyer, who allegedly is drafting, typing, editing and revising legal motions and briefs for the petitioner.  It is not clear who is signing the documents filed with the Court. On or about October 8, 2010, undersigned counsel reviewed the pending motion for judicial intervention (Doc. #21) and reviewed this Court's electronic Order to Show Cause, ordering a response by Friday October 15, 2010, as to why the relief sought should not be granted.

For the  reasons set forth in the accompanying affidavit(s) and for the reasons discussed below, the motion should  be denied.

## STANDARD FOR  PRELIMINARY INJUNCTION

### A.    Case Law Standard

This Court is familiar with the well established standard for the issuance of a preliminary injunction, especially here, where the allegations are not well founded, and have no legal basis, and the alleged harm is remote and speculative.  The Supreme Court has long held that injunctive relief is an "extraordinary remedy".  Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982).  In order to grant either a preliminary injunction  the plaintiff must demonstrate:

> [N]ot only that he is likely to suffer irreparable injury if relief is denied but that there is either (1) a likelihood of success on the merits or (2) a sufficiently serious question going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the plaintiff's favor.

Proctor & Gamble Co. v. Cheesborough-Pond's, Inc., 747 F.2d 114, 118 (2d Cir. 1984).

A showing of irreparable harm is "an absolute requirement for an award of injunctive relief."  Stewart v. U.S. Immigration and Naturalization Service, 762 F.2d 193, 199 (2d Cir. 1985).  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough to justify injunctive relief."  Id.  The petitioner must establish that "the alleged threats of irreparable harm are not remote or speculative but are actual and imminent."  New York v. Nuclear Regulatory Commission, 550 F.2d 745, 775 (2d Cir. 1977).

In Vega v. Lantz, 3:04Cv1215(DFM) Ruling and Order (Doc. #73)(D.Conn. March 21, 2006) this Court  stated as follows:

> The court construes the plaintiff's request as one requesting interim injunctive relief.  "[I]nterim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'"  Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (quoting Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)).  In addition, a federal court should grant

injunctive relief against a state or municipal official "only in situations of most compelling necessity." Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E.D. Mo.), aff'd, 426 U.S. 943 (1976). In this circuit the standard for injunctive relief is well established. To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000). Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. See Drywall Tapers &Pointers Local 1974 v. Local 530, 954 F.2d 69, 76-77 (2d Cir.1992). Where, as here, "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., Moore's Federal Practice ¶ 65.04[3] (2d ed.1995). Upon review of the record, the court determines that oral testimony and argument are not necessary in this case.

In the absence of an immediate, irreparable injury, petitioner's motion for an injunction regarding the handling of mail from a social correspondent, who is not an attorney, must be denied. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc. 596 F.2d 70, 72 (2d Cir. 1979)(As to the kind of irreparable harm that the party seeking an injunction must show, the claimed injury must be actual and imminent, not "remote or speculative.")

**B.**   **Statutory Standard Under the PLRA**

In addition, the Prison Litigation Reform Act (PLRA) limits the Court in regard to ordering injunctive relief. See 18 U.S.C. § 3626(a)(1)(A). Section 802 of the PLRA, 18 U.S.C. § 3626(a)(1)(A), provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." Handberry v. Thompson, 446 F.3d 335 (2nd Cir. 2006)(injunction was evaluated as necessary to ensure the PLRA's "need-narrowness-intrusiveness" requirements were satisfied.) With respect to remedies of federal law violations,

the PLRA provides that "[t]he court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. §3626(a)(1); see also Benjamin v. Fraser, 343 F.3d 35, 56 (2d Cir. 2003).

Petitioner's request for injunctive relief is not warranted by case law, and is overly intrusive on the day to day operations of the state's prisons.  Petitioner has no irreparable injury, nor can he show likely success on the merits.  His motion should be denied.

## I.   THE COURT SHOULD NOT MICROMANAGE THE MINUTIAE OF PRISON LIFE

When considering all of the implications of granting petitioner's motion, the Court should consider the context of incoming mail to a state prison, and should defer to the expertise and knowledge of experienced state prison officials. See, e.g., Turner v. Safley, 482 U.S. 78 (1987).   "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id., at 84-85.  To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life.  Ibid.  Where, as here, a state correctional institution is involved, federal courts have "additional reason to accord deference to the appropriate prison authorities."  Ibid.  McKune v. Lile, 536 U.S. 24, 39 (2002). The petitioner's motion, a demand for the Court to become involved in the minutia of the day-to-day running of the Enfield Correctional Institution (ECI) and Department of Correction (DOC) mailroom procedures, seeks an injunction concerning treating social mail from a social correspondent as "Legal Mail" and  seeks "judicial intervention" regarding speculative future

"retaliation," exactly what Justice Thomas described as "the ne plus ultra of what our opinions have lamented as a court's 'in the name of the Constitution, becoming . . . enmeshed in the minutiae  of prison operations.'  <u>Bell v</u>. <u>Wolfish</u>, 441 U.S. 520, 562, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)."  <u>Lewis v. Casey</u>, 518 U.S. 343, 362 (1996).  The entry of such an order as sought by the petitioner would be, as described by Justice Thomas, "inordinately -- indeed, wildly -- intrusive."  <u>Id.</u>  As discussed below, retaliation claims are so easily fabricated, they should be treated with great skepticism.

## II.     THE RESPONDENT AND STATE PRISON OFFICIALS  HAVE AN ABSOLUTE RIGHT TO READ AND REJECT INCOMING SOCIAL MAIL

It is not easy to keep prisons free from the ever constant attempts to introduce contraband into prisons.  As the Supreme Court noted, with regard to the introduction of contraband into prisons:

> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for anti-social criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others.  Even a partial survey of the statistics on violent crime in our Nation's prisons illustrates the magnitude of the problem.  During 1981 and the first half of 1982, there were over 120 prisoners murdered by fellow inmates in state and federal prisons.  A number of prison personnel were murdered by prisoners during this period.  Over 29 riots or similar disturbances were reported in these facilities for the same time frame.  And there were over 125 suicides in these institutions.  See Prison Violence, 7 Corrections Compendium (Mar. 1983).  Additionally, informal statistics from the United States Bureau of Prisons show that in the federal system during 1983, there were 11 inmate homicides, 359 inmate assaults on other inmates, 227 inmate assaults on prison staff, and 10 suicides.  There were in the same system in 1981 and 1982 over 750 inmate assaults on other inmates and over 570 inmate assaults on prison personnel.

> Within this volatile "community," prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize. In addition to these monumental tasks, it is incumbent upon these officials at the same time to maintain as sanitary an environment for the inmates as feasible, given the difficulties of the circumstances.

Hudson v. Palmer, 468 U.S. 517, 526-527 (1984).

Incoming mail poses a particular hazard, and the Supreme Court has imposed a reasonableness standard with regard to incoming mail, in part, because of the potential that incoming mail can be circulated and spread amongst the various prisoners and housing units. "Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct." Thornburgh v. Abbott, 490 U.S. 401, 412 (1989). Social correspondents, unlike attorneys who are bound by the Rules of Professional Responsibility and who are subject to various sanctions of the court, under the guise of mailing "legal materials" could communicate in code and could transmit written plans in violation of criminal law or prison rules if non-privileged mail could not be read and inspected in the normal course of DOC business with regard to review and monitoring of incoming mail. Written plans for gang activities or activities which threaten the safety of inmates, staff or the public could be interspaced within the many pages of transcripts, briefs or other documents which potentially could be used to conceal these plans under the guise of legal mail. The threat to security posed by petitioner's motion is not insignificant or speculative.

Nearly forty years ago, the Second Circuit in <u>Sostre v. McGinnis</u>, 442 F.2d 178, 199-200 (2d Cir. 1971) upheld the constitutionality of rejecting outgoing mail to the prisoner's sister, where it was found, as is at issue in the instant case before the court, that the mail included "unauthorized enclosures."  In <u>Sostre</u>, it was found that Sostre was using mail to his sister  as a vehicle to include unauthorized correspondence.  In this case, petitioner is seeking to have a female friend identified as "Patricia Joy" send in purported "legal documents" and have such mail from this social friend be treated as "Legal Mail."  This would be a grave security concern, and in fact, inmates who try to circumvent mail rules by having mail to social correspondents marked as "Legal Mail" can be issued disciplinary reports for "Security Tampering."   As the Second Circuit noted:

> Whatever wisdom there might be in such reflection, we cannot say with requisite certitude that the traditional and common practice of prisons in imposing many kinds of controls on the correspondence of inmates, lacks support in any rational and constitutionally acceptable concept of a prison system.  See <u>McCloskey v. Maryland</u>, 337 F.2d 72, 74-75 (4th Cir. 1964) ("Control of the mail to and from inmates is an essential adjunct of prison administration").   <u>See also</u>, <u>Diehl v. Wainwright</u>, 419 F.2d 1309 (5th Cir. 1970); <u>Abernathy v. Cunningham</u>, 393 F.2d 775 (4th Cir. 1968); <u>United States v. Stahl</u>, 393 F.2d 101 (7th Cir.) cert. denied 393 U.S. 879, 89 S. Ct. 181, 21 L. Ed. 2d 152 (1968); <u>Carey v. Settle</u>, 351 F.2d 483, 485 (8th Cir. 1965). n44 We note that Sostre did not contest the validity of Warden Follette's action in striking the name of his sister from the list of Sostre's authorized correspondents after it was learned that he was using letters addressed to his sister as vehicles for unauthorized correspondence.  See fn. 4, supra.  Discipline and prison order are sufficient interests to justify such regulation incidental to the content of prisoners' speech.  See <u>Kovacs v. Cooper</u>, 336 U.S. 77, 69 S. Ct. 448, 93 L. Ed. 513 (1949); Brennan, The Supreme Court and the Meikeljohn Interpretation of the First Amendment, 79 Harv.L.Rev. 1, 11 (1965).

<u>Sostre v. McGinnis</u>, 442 F.2d 178, 199-200 (2d Cir. N.Y. 1971).  Thus, the Second Circuit has long recognized that "controls on the correspondence of inmates" is a "traditional and common practice of prisons" which is both "rational and constitutionally acceptable."  The Fourth Circuit

in <u>McCloskey</u>, *supra*, characterized the practice as "an essential adjunct of prison administration." The <u>Sostre</u> Court cited the Eighth Circuit with approval stating, "Restrictions on the extent and character of prisoners' correspondence and examination or censorship in relation thereto have always been regarded as inherent incidents in the conduct of penal institutions and the control of confinements, activities, preoccupations and other relationships therein." <u>Lee v. Tahash</u>, 352 F.2d 970, 971 (8th Cir. 1965). <u>Sostre v. McGinnis</u>, at 200 n. 44.

It is well established that "Prisoners lawfully confined to state penitentiaries have no absolute right to the use of the mails." <u>Price v. Johnston</u>, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); <u>Adams v. Ellis</u>, 197 F.2d 483, 485 (5th Cir. 1952); <u>Numer v. Miller</u>, 165 F.2d 986 (9th Cir. 1948); <u>Gerrish v. State of Maine</u>, 89 F.Supp. 244, 246 (D.C.S.D.Me.1950); <u>Reilly v. Hiatt</u>, 63 F.Supp. 477 (D.C.M.D.Pa.1945). "Thus, the mere withholding of petitioner's letter by prison authorities is not a violation per se of any federal right. Nor is there any showing that the subject of the letter is of such a nature as to call for the exercise of equity powers to interfere with the administration of a state penitentiary." <u>United States ex rel. Thompson v. Fay</u>, 197 F. Supp. 855, 856 (S.D.N.Y. 1961). The Second Circuit has reiterated that prisoners do not have an absolute right to mail privileges for correspondence with family and friends. <u>Corby v. Conboy</u>, 457 F.2d 251 (2d Cir. 1972). "In certain instances the prison officials' refusal to mail an inmate's letter may be clearly justified, such as where communication of its contents to persons beyond the prison walls would pose a threat to prison discipline or security, or would hinder efforts to rehabilitate the inmate." <u>Corby v. Conboy</u>, at 254.

More recently, the Supreme Court, in <u>Beard v. Banks</u>, 548 U.S. 521 ( 2006) agreed that prison officials could prohibit inmates housed in the most restrictive level (level 2) of

Pennsylvania's long term segregation unit (LTSU) from having access to newspapers, magazines, and personal photographs.  Relying on Beard v. Banks, this Court has dismissed claims regarding the confiscation and/or refusal to send out in outgoing mail an inmate's manuscript of a book he was mailing to potential publishers, recognizing the right of prison officials to censor mail, and rejected claims to the contrary as frivolous, in an opinion of United States District Judge Hall, in Therrien v. Martin, Civ. No.. 3:07-cv-1285 (JCH), 2007 U.S. Dist. LEXIS 78090 (D. Conn. Oct. 19, 2007).  This Court noted, in Therrien, as follows:

> The United States Constitution permits greater restriction of prisoners' First Amendment rights than it permits for other persons.  See Beard v. Banks, 548 U.S. 521, 126 S. Ct. 2572, 2577-78, 165 L. Ed. 2d 697 (2006). Under the First Amendment, a prisoner may receive and send mail.  See Hudson v. Palmer, 468 U.S. 517, 547, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).  However, the correctional facility has the right to censor letters or withhold delivery if those actions are necessary to protect institutional security and if the facility applies appropriate procedural safeguards. Id. The right to censor necessarily encompasses the right to read non-legal correspondence. While the Supreme Court has afforded special protections to an inmate's legal mail, it never has held that the First Amendment prevents correctional staff from reading prisoners' non-legal mail. See Wolff v. McDonnell, 418 U.S. 539, 576, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (noting that "freedom from censorship is not equivalent to freedom from inspection or perusal").  Thus, any claim that a defendant read Therrien's social correspondence is not cognizable in this action and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Therrien v. Martin, Civ. No. 3:07-cv-1285 (JCH), 2007 U.S. Dist. LEXIS 78090 (D. Conn. Oct. 19, 2007).

Here, petitioner alleges that he is being helped by a person named "Patricia Joy" who allegedly has a "Power of Attorney" form.  According to petitioner's pending motion, staff legal counsel for the DOC, Attorney Nancy Case O'Brasky, correctly notified petitioner, by letter dated March 1, 2010, that "power of attorney" does not make one an attorney nor does it create any sort of attorney client relationship.  See Motion for Judicial Intervention (Doc. #21 at 4).

"'The inherent right of a person to appear pro se in legal proceedings cannot be assigned to another by executing the power of attorney.  To hold otherwise would invite the unauthorized practice of law.'  519 N.Y.S.2d at 315."  <u>Long v. Delarosa</u>, 1995 Conn. Super. LEXIS 314 Conn. Super. Ct. 1995); <u>Christiansen v. Melinda</u>, 857 P.2d 345 (Alaska 1993).  ("an agent authorized to act on his principal's behalf under a power of attorney may not file and prosecute a civil action pro se in his principal's stead." <u>Id</u>. at *10.   In fact, as discussed below, petitioner's social correspondent, Ms. Patricia Joy, may very well be engaged in the unauthorized practice of law, if, as it appears, she is drafting legal documents for petitioner, signing them and mailing them to the court for the petitioner.

**III.    THE PREPARATION AND SIGNING OF MOTIONS AND OTHER MOVING PAPERS FOR THE PETITIONER CONSTITUTES THE UNAUTHORIZED PRACTICE OF LAW**

Connecticut General Statute § 51-88 (c) provides:   "Any person who violates any provision of this section [regarding the practice of law by persons not attorneys] shall be deemed in contempt of court, and the Superior Court shall have jurisdiction in equity upon the petition of any member of the bar of this state in good standing or upon its own motion to restrain such violation."

**Definition  -  Connecticut Practice Book**

**Sec. 2-44A. Definition of the Practice of Law**
(a) General Definition:  The practice of law is ministering to the legal needs of another person and applying legal principles and judgment to the circumstances or objectives of that person.  This includes, but is not limited to:
(1) Holding oneself out in any manner as an attorney, lawyer, counselor, advisor or in any other capacity which directly or indirectly represents that such person is either (a) qualified or capable of performing or (b) is engaged in the business or activity of performing any act constituting the practice of law as herein defined.

(2) Giving advice or counsel to persons concerning or with respect to their legal rights or responsibilities or with regard to any matter involving the application of legal principles to rights, duties, obligations or liabilities.

(3) Drafting any legal document or agreement involving or affecting the legal rights of a person.

(4) Representing any person in a court, or in a formal administrative adjudicative proceeding or other formal dispute resolution process or in any administrative adjudicative proceeding in which legal pleadings are filed or a record is established as the basis for judicial review.

(5) Giving advice or counsel to any person, or representing or purporting to represent the interest of any person, in a transaction in which an interest in property is transferred where the advice or counsel, or the representation or purported representation, involves (a) the preparation, evaluation, or interpretation of documents related to such transaction or to implement such transaction or (b) the evaluation or interpretation of procedures to implement such transaction, where such transaction, documents, or procedures affect the legal rights, obligations, liabilities or interests of such person, and

(6) Engaging in any other act which may indicate an occurrence of the authorized practice of law in the state of Connecticut as established by case law, statute, ruling or other authority.

"Documents" includes, but is not limited to, contracts, deeds, easements, mortgages, notes, releases, satisfactions, leases, options, articles of incorporation and other corporate documents, articles of organization and other limited liability company documents, partnership agreements, affidavits, prenuptial agreements, wills, trusts, family settlement agreements, powers of attorney, notes and like or similar instruments; and pleadings and any other papers incident to legal actions and special proceedings.

The term "person" includes a natural person, corporation, company, partnership, firm, association, organization, society, labor union, business trust, trust, financial institution, governmental unit and any other group, organization or entity of any nature, unless the context otherwise dictates.

In Statewide Grievance Committee. v. Patton, 239 Conn. 251, 683 A.2d 13591 (1996) the Connecticut Supreme Court held the preparation of legal documents by a person who was not trained in the law as an attorney violated a state statute that prohibited the practice of  law by persons not admitted as attorneys.  The Court stated, "We hold that the defendant's preparation of legal documents, therefore, violated §51-88 which prohibits the practice of law by one not admitted as an attorney."   See also, e.g. Grievance v. Srubar, 000179323S, Superior Court Of

Connecticut, Judicial District Of Stamford - Norwalk, At Stamford, 2000 Conn. Super. LEXIS 3582,(December 20, 2000); Statewide Grievance Comm. v. Harris, NO. CV93 0531164S, Superior Court Of Connecticut, Judicial District Of Hartford - New Britain, At Hartford, (1995)Conn. Super. LEXIS 3213, (November 14, 1995).

Randall Saunders, the petitioner, is not an attorney and he has no standing to represent anyone other than himself.[1]   Conn Gen Stat. §51-88.[2]   See Vega v. Lantz, Case No. 3:04CV1215(DFM), 2006 U.S. Dist. LEXIS 81231, (D.Conn November 6, 2006).  The Vega Court stated,

> As a pro se litigant, the plaintiff only can represent himself.  See Caputo v. Fauver, 800 F. Supp. 168, 170 (D.N.J. 1992) (holding that pro se prisoner cannot adequately represent interest of class of prisoners), aff'd, 995 F.2d 216 (2d Cir. 1993); see also Fed. R. Civ. P. 11 (a)[(requiring all papers to be signed by the party or an attorney).  The plaintiff concedes that he cannot sufficiently represent the interests of the class.  He argues, however, that because he has filed a motion for appointment of counsel, the court should disregard this fact and certify the class with the expectation that pro bono counsel will be located.  As stated above, there is no guarantee that the court will locate an attorney willing to accept an appointment in this case.

---

[1] The petitioner's social correspondent, Patricia Joy, is not an attorney either, but according to petitioner's motion merely holds a "power of attorney" form.

[2] Conn. Gen. Stat. § 51-88. Practice of law by persons not attorneys.
(a) A person who has not been admitted as an attorney under the provisions of section 51-80 shall not: (1) Practice law or appear as an attorney-at-law for another, in any court of record in this state, (2) make it a business to practice law, or appear as an attorney-at-law for another in any such court, (3) make it a business to solicit employment for an attorney-at-law, (4) hold himself out to the public as being entitled to practice law, (5) assume to be an attorney-at-law, (6) assume, use or advertise the title of lawyer, attorney and counselor-at-law, attorney-at-law, counselor-at-law, attorney, counselor, attorney and counselor, or an equivalent term, in such manner as to convey the impression that he is a legal practitioner of law, or (7) advertise that he, either alone or with others, owns, conducts or maintains a law office, or office or place of business of any kind for the practice of law.

In Judge Silbert's well-reasoned opinion in <u>Long v. Delarosa</u>, 1995 Conn. Super. LEXIS 314 (Conn. Super. Ct. 1995), he notes that "the practice of law by one not admitted as an attorney at law is not legal, and, in fact, is criminal, the agent's powers are indeed limited by those laws that prohibit the unauthorized practice of law. See, also, <u>State v. Hunt</u>, 75 Wash. App. 795, 880 P.2d 96 (1994); <u>Kohlman v. Western Pennsylvania Hospital, et al</u>, 1994 WL. 730834, A.2d (Pa.Super. 1994).  <u>Long v. Delarosa</u>, 1995 Conn. Super. LEXIS 314  at *11(Conn. Super. Ct. 1995). Judge Silbert then specifically addresses Connecticut's power of attorney statute and rejects the claim being made by petitioner here, stating, "It is apparent that, read against the backdrop of General Statutes § 51-88, the filing of a pro se appearance by an attorney in fact is prohibited by the wording of General Statutes § 1-43 which permits the exercise of the power of attorney only to the extent that the principal is permitted by law to act through an agent." "[A] power of attorney does not authorize a nonlawyer to practice law."   <u>In re Conservatorship of Riebel</u>, 625 N.W.2d 480, 483 (Minn. 2001)( other citations omitted).

Thus, to the extent that petitioner's motions and other documents are signed by "Patricia Joy" as initialed "RBS" but lack the signature of the petitioner as required by Rule 11 Fed. R. Civ. P, they should be stricken.  If they are signed by the petitioner, the instant motion should be denied.

## IV.     <u>THERE IS NO RIGHT TO COUNSEL IN A §2254 PETITION</u>

To the best of undersigned counsel's knowledge, there is no counsel available to be paid by the State of Connecticut to be appointed in a civil money damages case. See, e.g., <u>United States v. Coven</u>, 662 F.2d 162, 176 (2d Cir. 1981) (there is no constitutionally guaranteed right to the assistance of counsel in a civil case).  There is no state statutory right to public defender or

special public defender paid for by the State of Connecticut for a state prisoner filing a §2254 petition in the District Court.  See <u>Lozada v. Warden</u>, 223 Conn. 834; 613 A.2d 818 (1992).  The right to effective assistance of counsel in a state habeas action in state court is predicated on the statutory right to habeas counsel pursuant to General Statutes § 51-296,[3] which provides for the appointment of counsel for an indigent person 'in any habeas corpus proceeding arising from a criminal matter . . . '  <u>Lozada v. Warden</u>, 223 Conn. at 838. There is, however, no federal constitutional right to counsel for indigent prisoners seeking state postconviction relief, even for prisoners facing a sentence of death.  <u>Murray v. Giarratano</u>, 492 U.S. 1, 7-8 (1989)(rejecting a broad interpretation of <u>Bounds v. Smith</u>, 430 U.S. 817(1977)).

In this regard, petitioner has pending a state court habeas petition in which, according to the Judicial Branch file and state docket sheet, he is represented by an attorney, H. Jeffrey Beck, 30 Ferry Blvd., Stratford, CT, 06615.   See <u>Saunders v. Warden</u>, CV-06-4000933, Judicial District of Tolland at Rockville.  (Doc. 17-1, Appendix P; see also docket sheet attached hereto.) Because he presently has a state habeas action pending, this entire §2254 petition should be dismissed, as the petitioner has not exhausted his state court remedies.  See Motion to Dismiss (Doc. #17), memorandum in support of the motion to dismiss (Doc. #17-1) and appendices filed in support of the motion to dismiss.

---

[3] General Statutes § 51-296 (a) provides in relevant part:  "In any criminal action, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any delinquency matter, the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . ."

Petitioner's reliance on <u>Bounds</u>, *supra*, Petitioner's Motion (Doc. #21) at 2, is misplaced, and <u>Bounds</u> has been significantly limited by the definition of access to court as explained in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996)(the ability to file a complaint in court).  There is no right "to litigate effectively once in court."  <u>Lewis v. Casey</u>, 518 at 354.  The state court docket sheet reveals that petitioner filed his state court post-trial brief on September 27, 2010 (See docket entry #209.00).  Thus, petitioner's assertion in his pending motion that he is unable to meet court deadlines is amply refuted by the record. He has already filed his state court brief, and this Court has granted an extension until November 24, 2010, for petitioner to file his opposition to the respondent's motion to dismiss.  See Doc. # 20.  If petitioner needs more time that that to respond he can simply file another motion for a second extension of time.

"Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' <u>Jermosen v. Coughlin</u>, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (citing <u>Jones v. Smith</u>, 784 F.2d 149, 151-52 (2d Cir. 1986))." <u>Davis v. Goord</u>, 320 F.3d 346, 352 (2d Cir. 2003).  In <u>Davis v. Goord</u>, the Second Circuit stated that two instances of mail interference are insufficient to state a claim for denial of access to the courts where as here, there has been no prejudice and no deadline has been missed.  Indeed, in this case, as can be seen from the undisputed facts of the respondent's affidavits in response to the Order to Show Cause, there has been no deliberate interference of any kind, but rather a minor delay due solely to the fact that petitioner's social correspondent sent a package by FedEx, and under DOC mailing procedures FedEx packages are directed to the warehouse. Captain Vinton, a supervisory prison official at ECI, located the package and promptly had it delivered to the petitioner.  This does not constitute interference, but rather assistance.

The Commissioner of Correction, pursuant to his authority under Conn. Gen. Stat. §18-81, provides for legal assistance of a civil nature to indigent inmates through a legal services program vendor.  This vendor is presently Attorney Sydney Schulman, d/b/a Inmates Legal Assistance to Program (ILAP). See Smith v. Armstrong, 968 F. Supp. 40; (D.Conn 1996)(finding that inmates had no actual injury and lacked standing due to services provided by ILAP).  In Bounds v. Smith, 430 U.S. 817, 822-25, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977), the Supreme Court approved of various methods of providing access to court, and encouraged local experimentation, including the method used here in Connecticut, i.e. "the use of full-time staff attorneys, working either in new prison legal assistance organizations….  Legal services plans not only result in more efficient and skillful handling of prisoner cases, but also avoid the disciplinary problems associated with writ writers, see Johnson v. Avery, 393 U.S., at 488; (stating that "It is indisputable that prison 'writ writers' like petitioner are sometimes a menace to prison discipline….")[4] Procunier v. Martinez, 416 U.S. 396, 421-422 (1974).

Admittedly attorneys from ILAP will not assist in a habeas action arising from a criminal matter, as the ILAP contract is limited to conditions of confinement cases.  Under Lozada v. Warden, 223 Conn. 834; 613 A.2d 818 (1992) and Conn. Gen. Stat. § 51-296, the State of Connecticut provides attorneys in habeas actions arising from criminal matters and in state court appeals from the state habeas court to the Connecticut Appellate and Supreme Courts.  There simply is no statutory or constitutional right to counsel in a §2254 petition such as this one.

---

[4] The Department of Correction has a contract for attorneys to provide these legal services so as to avoid the security issues raised when one inmate is engaged in trade or barter with regard to legal services.  Further, it is contrary to sound correctional practice to allow one inmate to become a power broker or leader within the institution by gaining knowledge or control over another inmate's personal affairs. See http://www.ct.gov/doc/LIB/doc/PDF/AD/ad1003.pdf.

Shaw v. Murphy, 532 U.S. 223, 225, 231(2001) (inmates have no constitutional right to provide legal assistance to other inmates).  As stated above, there is no right to litigate effectively.  Jones v. Armstrong, 367 Fed. Appx. 256, 258 (2d Cir. 2010)(Connecticut satisfied  right of access to the courts by appointing appellate counsel not just once but twice).  Indeed, this Court is familiar with both ILAP and has previously held that the "inability to litigate as effectively as he may have preferred is insufficient to demonstrate an actual injury."  Page v. Lantz, Case No. 3:05CV1271 (MRK), 2007 U.S. Dist. LEXIS 46041 at *13 (D. Conn.  June 26, 2007).

"The Connecticut Supreme Court applied the holdings of Bounds and Lewis in evaluating Fernandez' claim that he was denied access to the courts because he was not afforded access to a law library.  See Fernandez, 254 Conn. at 653-54."  Fernandez v. Lantz, 2010 U.S. Dist. LEXIS 41166 (D. Conn. 2010).  The Connecticut Supreme Court held that the availability of assistance from standby counsel afforded Fernandez access to the courts and satisfied the constitutional requirement. See id. at 658; This District Court has agreed with the Connecticut Supreme Court and concluded that the appointment of standby counsel satisfied the State of Connecticut's obligation to provide meaningful access to the courts.  Id.  State v. Fernandez, 254 Conn. 637, 758 A.2d 842 (2000).  The fact that petitioner presently has pending a state court habeas petition and the state court has appointed Jeffrey Beck completely satisfies the state's obligation toward petitioner with regard to access to court.  In the event petitioner is unsuccessful in his state court habeas action, he may very well again have available to him a Special Public Defender to assist him with his appeal to the Connecticut Appellate and/or Supreme Courts.  As noted in Respondent's Motion to Dismiss (Doc. #17), and moving papers in support of the motion to dismiss, the petitioner's failure to exhaust requires this action be dismissed in its entirety.

Further, petitioner appears to claim in his motion that the reason he needs relief is that his legal papers must be typed.  This is a mistaken notion.  This Court has no rule which prohibits the filing of handwritten motions and briefs and *pro se* prisoner litigants almost always file handwritten documents, as there is no right to a typewriter in prison and the Connecticut DOC has very limited resources with regard to typewriters.  The Second Circuit has ruled that there is " '. . . no constitutional right to a typewriter as an incident to the right of access to the courts.' Wolfish v. Levi, 573 F.2d 118, 132 (2d Cir. 1978), rev'd on other grounds sub nom.  Bell v. Wolfish, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)."  Taylor v. Coughlin, 29 F.3d 39, 40 (2d Cir. 1994).

Thus, the entire premise of petitioner's motion, i.e. that "As an inmate, Saunders is required to write motions and send to his power of attorney to type and send" (Pet. Motion Doc. #21 at 1) is a false premise.  There is absolutely so such requirement for the United States District Court and petitioner is free to send in and file in  this Court handwritten documents.  Indeed, Rule 11 Fed. R. Civ. P. requires that the petitioner himself must sign all filings sent to this Court.  It appears that there is no need or factual basis for the extraordinary relief petitioner seeks and his motion should be denied.

## V.    THERE IS NO BASIS FOR A RETALIATION CLAIM

Reading the *pro se* motion liberally, petitioner's arguably seeks injunctive relief  based on "retaliation" for the exercise of a constitutional right.  To establish a First Amendment retaliation claim, a plaintiff must allege both that he  engaged in constitutionally protected conduct and that the conduct was a substantial or motivating factor in adverse actions taken by the prison officials.  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).  The alleged retaliation

must be more than de minimis; that is, it must be sufficient to deter a similarly situated person of ordinary firmness from exercising his or her rights.  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).  (Plaintiff here has never been deterred from exercising his right to seek redress from the courts.

Indeed, as Captain Vinton attests in his declaration, he had one interaction with petitioner with regard to his package of material sent by Ms. Patricia Joy, locating the FedEx package sent to petitioner that was directed to the warehouse and delivering the package to petitioner on October, 2010.  See Declaration of Captain Vinton.

Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Bell v. Wolfish, 441 U.S. 520, 547, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979).  The state regulations governing incoming mail have been scrutinized and have been approved on numerous occasions as being constitutional.  See e.g. Washington v. Meachum, 238 Conn. 692, 680 A.2d 262 (1996); Therrien v. Martin, Civ. No. 3:07-cv-1285 (JCH), 2007 U.S. Dist. LEXIS 78090 (D. Conn. Oct. 19, 2007).

In order to prove a retaliation claim, the prisoner must demonstrate that his first amendment activities constituted the actual motivating factor, McDonald v. Hall, 610 F.2d 16 (1st Cir. 1979), or the "but for" cause of the conduct, Huang v. Board of Governors, 902 F.2d 1134, 1140 (4th Cir. 1990) (citations omitted).  The failure to establish that the retaliation adversely impacted the prisoner's exercise of his constitutional rights is fatal to the prisoner's case.  American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993).

Pursuant to the Second Circuit's instruction, this Court should analyze a claim of retaliation in the prison context with skepticism.  "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."  <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983).  The Second Circuit  in <u>Dawes v. Walker</u>,  239 F.3d 489 (2d Cir 2001), expanded on the rationale as to why prisoners' claims of "retaliation" should be viewed with extra skepticism, stating:

> First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.  See <u>Franco v. Kelly</u>, 854 F.2d 584, 590 (2d Cir. 1988).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  <u>Dawes</u>, 239 F.3d at 493.  See also  <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 398 (6th Cir. 1999) (retaliation against an inmate must be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity).  "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."  <u>Dawes</u>, 239 F.3d at 493.  In making this determination, the court's inquiry must be "tailored to the different circumstances in which retaliation claims arise," bearing in mind that "prisoners may be required to tolerate more . . .  than average citizens, before a [retaliatory] action taken against them is considered adverse."  Id. (quoting <u>Thaddeus - X</u>, 175 F.3d at 398).

Prison officials at ECI did not interfere with or in any other way retaliate against petitioner.  ECI officials are simply applying the neutral, even-handed state regulations which

are set forth in Regs.  State Agencies 18-81-32, to exclude mail from a non-lawyer, Patricia

Joy, from the handling afforded to privileged attorney-client correspondence.[5]

## CONCLUSION

For all the foregoing reasons, petitioner's motion for judicial intervention (Doc. #21)

should be denied.

RESPONDENT
Commissioner of Correction

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:     /s/ _____
               Steven R. Strom
               Assistant Attorney General
               110 Sherman Street
               Hartford, CT 06105
               Tel.:  (860) 808-5450
               Fax:  (860) 808 5591
               Federal Bar #ct01211
               E-Mail:  steven.strom@ct.gov

---

[5] See http://www.ct.gov/doc/LIB/doc/PDF/AD/ad1007.pdf; see also Regs. Conn. State Agencies §18-81-32.

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 15th day

of  October, 2010:

Randall B. Saunders, Inmate #253100
Enfield Correctional Institution
289 Shaker Road
P.O. Box 1500
Enfield, CT 06082

Michael E. O'Hare, Esq.
Tamara A. Grosso, Esq.
Office of the Chief State's Attorney
Civil Litigation Unit
300 Corporate Place
Rocky Hill, CT 06067


  /s/_____
Steven R. Strom
Assistant Attorney General